1
2
3
4
5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

6   BARBARA DOYAL,

7                                  Plaintiff,

8          v.

9   MICHAEL J. ASTRUE, Commissioner of
    Social Security,
10
11                                 Defendant.

Case No. 3:10-cv-05301-BHS-KLS

REPORT AND RECOMMENDATION

Noted for April 1, 2011

12
13
14
15
16
17

Plaintiff has brought this matter for judicial review of defendant's denial of her

18  applications for disability insurance and supplemental security income ("SSI") benefits.  This

19  matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §

20  636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v.

21  Weber, 423 U.S. 261 (1976).  After reviewing the parties' briefs and the remaining record, the

22  undersigned submits the following Report and Recommendation for the Court's review,

23  recommending that for the reasons set forth below, defendant's decision be reversed and that this

24  matter be remanded for further administrative proceedings.

25                          FACTUAL AND PROCEDURAL HISTORY

26          On November 16, 2005, plaintiff filed an application for disability insurance and another

REPORT AND RECOMMENDATION - 1

one for SSI benefits, alleging disability as of January 1, 2001, due to anxiety with both panic and agoraphobia, posttraumatic stress disorder and a personality disorder. <u>See</u> Tr. 11, 85, 90, 105. Both her applications were denied upon initial administrative review and on reconsideration. <u>See</u> Tr. 11, 52, 57, 59.  A hearing was held before an administrative law judge ("ALJ") on September 4, 2008, at which plaintiff, represented by counsel, appeared and testified. <u>See</u> Tr. 24-47.

On November 12, 2008, the ALJ issued a decision in which plaintiff was determined to be not disabled. <u>See</u> Tr. 11-23.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on February 25, 2010, making the ALJ's decision defendant's final decision. <u>See</u> Tr. 1; <u>see</u> <u>also</u> 20 C.F.R. § 404.981, § 416.1481.  On April 28, 2010, plaintiff filed a complaint in this Court seeking judicial review of defendant's decision. <u>See</u> ECF #1-#5.  The administrative record was filed with the Court on July 19, 2010. <u>See</u> ECF #11.  The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the ALJ's decision should be reversed and remanded to defendant for further administrative proceedings, because the ALJ erred: (1) in evaluating the medical evidence in the record; (2) in assessing plaintiff's credibility; and (3) in evaluating the lay witness evidence in the record.  The undersigned agrees that for the reasons set forth below the ALJ erred in finding plaintiff to be not disabled.  Accordingly, the undersigned recommends that the Court reverse defendant's decision be reversed, and that it remand this matter for the purpose of conducting further administrative proceedings.  Although plaintiff requests oral argument in this matter, the undersigned finds such argument to be unnecessary here.

<u>DISCUSSION</u>

This Court must uphold defendant's determination that plaintiff is not disabled if the proper legal standards were applied and there is substantial evidence in the record as a whole to

REPORT AND RECOMMENDATION - 2

support the determination. <u>See</u> <u>Hoffman v. Heckler</u>, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. <u>See</u> <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Fife v. Heckler</u>, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than a scintilla but less than a preponderance. <u>See</u> <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); <u>Carr v. Sullivan</u>, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991).  If the evidence admits of more than one rational interpretation, the Court must uphold defendant's decision. <u>See</u> <u>Allen v. Heckler</u>, 749 F.2d 577, 579 (9th Cir. 1984).

I.      <u>The ALJ's Evaluation of the Medical Evidence in the Record</u>

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. <u>See</u> <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. <u>Sample v. Schweiker</u>, 694 F.2d 639, 642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld." <u>Morgan v. Commissioner of the Social Sec. Admin.</u>, 169 F.3d 595, 601 (9th Cir. 1999).  Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." <u>Id.</u> at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." <u>Reddick</u>, 157 F.3d at 725.  The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." <u>Id.</u>  The ALJ also may draw inferences "logically flowing from the evidence." <u>Sample</u>, 694 F.2d at 642.  Further, the Court itself may

REPORT AND RECOMMENDATION - 3

draw "specific and legitimate inferences from the ALJ's opinion." <u>Magallanes v. Bowen</u>, 881

F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted

opinion of either a treating or examining physician. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir.

1996).  Even when a treating or examining physician's opinion is contradicted, that opinion "can

only be rejected for specific and legitimate reasons that are supported by substantial evidence in

the record." <u>Id.</u> at 830-31.  However, the ALJ "need not discuss *all* evidence presented" to him

or her. <u>Vincent on Behalf of Vincent v. Heckler</u>, 739 F.3d 1393, 1394-95 (9th Cir. 1984)

(citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative

evidence has been rejected." <u>Id.</u>; <u>see also</u> <u>Cotter v. Harris</u>, 642 F.2d 700, 706-07 (3rd Cir. 1981);

<u>Garfield v. Schweiker</u>, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of

those who do not treat the claimant. <u>See</u> <u>Lester</u>, 81 F.3d at 830.  On the other hand, an ALJ need

not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and

inadequately supported by clinical findings" or "by the record as a whole." <u>Batson v.</u>

<u>Commissioner of Social Sec. Admin.</u>, 359 F.3d 1190, 1195 (9th Cir. 2004); <u>see also</u> <u>Thomas v.</u>

<u>Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002); <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir.

2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a

nonexamining physician." <u>Lester</u>, 81 F.3d at 830-31.  A non-examining physician's opinion may

constitute substantial evidence if "it is consistent with other independent evidence in the record."

<u>Id.</u> at 830-31; <u>Tonapetyan</u>, 242 F.3d at 1149.

A.    Dr. Cosgrove

Plaintiff challenges the following findings made by the ALJ:

REPORT AND RECOMMENDATION - 4

The claimant . . . met with a psychiatric consultative examiner, Lisa Cosgrove, DO, on March 23, 2006 (4F).  The claimant reported anxiety and depression.  She described a long history of a "free running" type of anxiety, worse at times than others, and chronic dysphoria.  She stated that she had an intolerance to being along [sic], as well as an inability to tolerate changes in her environment, particularly the work place.  She acknowledged that this provoked feelings of emptiness and caused her to feel overwhelmed.  She stated that this caused her anxiety level to escalate and she had a hard time focusing and concentrating.  It was noted that the claimant had a history in her relationships of chronic ambivalence with idealization and devaluation.  She indicated a history of abusing alcohol and marijuana but stated that she had been in remission for five months.

Dr. Cosgrove diagnosed the claimant with: by history, depressive disorder, not otherwise specified, in partial remission, versus dysthymic disorder, chronic, in partial remission; anxiety disorder, not otherwise specified, by history, provisional; alcohol abuse in early remission; marijuana abuse in early remission; and borderline personality disorder (4F -8).  Dr. Cosgrove determined that the claimant's Global Assessment of Functioning (GAF) was 60 (4F-8).

. . .

. . . Dr. Cosgrove . . . found that the claimant's condition should improve with appropriate treatment (4F).  She noted that the claimant should continue with her medication management and engage in weekly psychotherapy.  She indicated that behavioral therapy was the best treatment for the claimant's condition and that the likelihood of improved social functioning and a return to full independent occupational functioning within one or two years was good.

Moreover, Dr. Cosgrove noted during her examination with the claimant that the claimant's mood was only mildly dysphoric (4F).  The claimant's affect was broad and she smiled and laughed spontaneously and appropriately during the examination.  The claimant did not display any psychomotor agitation or retardation.  She was pleasant and cooperative throughout the examination.  Her speech was of regular rate, tone, and flow, without slurring or pressure.  Her associations were tight and her thoughts followed a logical pattern.  Dr. Cosgrove however found that the claimant did not have much insight into her psychiatric symptoms and their effect on her social and occupational functioning and her emotional state.  She determined that the claimant's GAF was 60 which reflects only moderate limitations in social and occupational functioning.  Despite the claimant's symptoms, Dr. Cosgrove found that the claimant was able to work (4F).  She noted that the claimant had a long history of intense fears of abandonment that had played out in the workplace.  She stated that the claimant thus needed to increase her support base in order

to manage.  I give significant weight to Dr. Cosgrove's findings as they are
consistent with the objective medical evidence and the claimant's wide range
of activities. . . .

Tr. 14, 18.  Specifically, plaintiff takes issue with what she argues was the ALJ's failure to note

Dr. Cosgrove's belief that she would be able to maintain consistent employment only after a one

to two year period of weekly psychotherapy, which plaintiff asserts supports a determination that

she is disabled.

    The undersigned disagrees that the record definitively establishes plaintiff's reading of

Dr. Cosgrove's opinion is correct, or at least more correct than that of the ALJ. See Allen, 749

F.2d at 579 (if evidence admits of more than one rational interpretation, defendant's decision

must be upheld).  Dr. Cosgrove's opinion regarding plaintiff's ability to function reads in

relevant part:

> The claimant's prognosis is good with the following recommendations.
> Provided the claimant will continue with her medication management through
> her nurse practitioner, she seems to be receiving benefit from this medication.
> Her depressive symptoms at this time are in partial and almost full remission,
> based upon this evaluation, her responses, and presentation.  Also
> recommended would be weekly psychotherapy. . . . Provided the claimant
> would develop a good therapeutic alliance with the therapist and stay in
> dialectic behavioral therapy, the likelihood that she could have improved
> social functioning and a return to full independent occupational functioning
> within one year to two years, would be considered good. . . .
>
> . . . The claimant shows no impairment in judgment or cognition that would
> preclude her from managing her own funds.
>
> At this time, the claimant's depressive symptoms seem to be in partial
> remission.  She is compliant with her medications at this time, although she
> does, at times, abuse her benzodiazepines and this should be monitored
> closely.  I see no significant impairment that would preclude her from
> returning to the workplace.  Recommendations, however, would include
> referral to the Department of Vocational Rehabilitation for assistance in
> finding a position, interviewing skills, and support and assistance in
> developing a strengthening of both hard and soft employment skills.  The
> claimant has a long history of intense fears of abandonment that have played
> out in the workplace, most recently her two-week job in October 2005.  This

REPORT AND RECOMMENDATION - 6

1
2
3

will require increasing her support base in order to manage.  Again the likelihood that she could <u>maintain</u> consistent employment, on a more probable basis, provided she developed a good therapeutic alliance and participates in dialectic therapy on a weekly basis for 1-2 two years, to be fully stabilized, therefore a higher probably [sic] of job retention in 1-2 years.

4
5
6
7
8
9
10
11
12

Tr. 191-92 (emphasis in original).  As can be seen, Dr. Cosgrove saw "no significant impairment that would preclude" plaintiff "from returning to the workplace." Tr. 192.  It also appears Dr. Cosgrove believed plaintiff would have "improved social functioning" and be able to "return to full independent occupational functioning" within "one to two years," if she remained in a good therapeutic relationship. Tr. 191.  Also, while not clearly stated by Dr. Cosgrove, it seems she felt participation in a good therapeutic relationship in addition likely would result in plaintiff becoming "fully stabilized" with "a higher" probability of job retention/maintaining "consistent employment." Tr. 192.

13
14
15
16
17
18
19
20
21
22
23
24
25
26

Clearly, Dr. Cosgrove did not view plaintiff as being disabled as of the time she provided her opinion.  Nor did Dr. Cosgrove clearly state, as plaintiff asserts, that engagement in sustained work activity would be possible only <u>after</u> one to two years of therapy had occurred.  On the one hand, it seems as the ALJ found, that Dr. Cosgrove was opining that plaintiff could return to the workplace now and could continue to remain there, as long as she was active in therapy and was able to maintain a good relationship with a therapist.  On the other hand, Dr. Cosgrove did imply that plaintiff would again reach "full independent occupational functioning" only within one to two years of engaging in such therapy.  Nor is it clear what was meant by "fully stabilized" or "a higher" probability of job retention/maintaining consistent employment.  Given this ambiguity, the undersigned cannot fault the ALJ for choosing one rational interpretation, i.e., his, over that of another, i.e., plaintiff's.  Nevertheless, in light of the errors the ALJ committed in evaluating the remaining objective medical evidence in the record regarding plaintiff's mental impairments

REPORT AND RECOMMENDATION - 7

and limitations discussed below, Dr. Cosgrove's assessment of plaintiff's ability to function and

return to and remain in the workplace should be reconsidered on remand as well.

      B.    <u>Dr. Neims and Dr. Wheeler</u>

Plaintiff challenges as well the ALJ's following findings:

> There are several [Washington State] Department of Social & Health Services (DSHS) psychological evaluations of the claimant in the record (1F, 13F, 14F, 16F). Kimberly Wheeler, PhD, assessed the claimant on September 14, 2005 (1F). She found that the claimant had a mild depressed mood, mild motor retardation, and mild paranoid behavior. She however indicated that the claimant had marked verbal expression of anxiety or fear. No other symptoms were indicated. She determined that the claimant had multiple moderate limitations and marked limitation in her ability to respond appropriately to and tolerate the pressure and expectations of a normal work setting. Dan Neims, PsyD, assessed the claimant in 2006, 2007, and 2008 (13F, 14F, 16F). He determined that the claimant had multiple moderate and marked functional limitations as a result of her psychiatric symptoms. I give limited weight to these evaluations as they are based upon the claimant's subjective reporting of her symptoms and limitations in a secondary gain context, and are not impressively supported by findings and observations. They are inconsistent with the other objective medical evidence and the claimant's wide range of activities.

Tr. 19. Plaintiff argues, and the undersigned agrees, that the reasons the ALJ provided above for

rejecting the evaluations of Drs. Neims and Wheeler are not valid.

      First, as plaintiff points out, it is not at all clear that Dr. Neims and Dr. Wheeler relied on

– or relied solely on – plaintiff's own subjective reporting. Rather, the evaluation reports the two

examining psychologists completed each contain mental status examinations, which also appear

to include some of their own clinical observations of plaintiff. <u>See</u> Tr. 159-65, 251-59, 261-69,

278-89; <u>see also</u> <u>Sprague v. Bowen</u>, 812 F.2d 1226, 1232 (9th Cir. 1987 (opinion that is based on

clinical observations supporting diagnosis constitutes competent evidence); <u>Clester v. Apfel</u>, 70

F.Supp.2d 985, 990 (S.D. Iowa 1999) (mental status examination results provide basis for

diagnostic impression of psychiatric disorder, just as physical examination results provide basis

REPORT AND RECOMMENDATION - 8

for diagnosis of physical illness or injury).  As the Ninth Circuit has further clarified in another recent case:

> . . . [A]n ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations. *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir.2001) ("In sum, the ALJ appears to have relied on her doubt's about [the claimant's] overall credibility to reject the entirety of [the examining psychologist's] report, including portions that [the psychologist] deemed to be reliable."). . . .

Ryan v. Commissioner of Social Sec., 528 F.3d 1194, 1199-1200 (9th Cir. 2008).  As in Ryan, there is nothing in the evaluation reports of either Dr. Wheeler or Dr. Neims "to suggest" they "disbelieved [plaintiff's] description of her symptoms, or that [they] relied on those descriptions more heavily than [their] own clinical observations in reaching" their conclusions. Id. at 1200; see also Tr. 159-65, 251-59, 261-69, 278-89.

Second, just because a claimant is being medically evaluated while applying for disability benefits, this does not necessarily mean it constitutes "a secondary gain context." Tr. 19.  That is, were the ALJ's position to be adopted here, the medical evaluations of every claimant performed for the purposes of determining eligibility for such benefits would be suspect.  But in the absence of any specific evidence indicating the evaluating medical source has acted improperly – and the ALJ has pointed to no such evidence in this case – the purpose for which an evaluation report is obtained is not a legitimate basis for the ALJ to reject it. See Lester, 81 F.3d 821, 832 (9th Cir. 1996) (absent "evidence of actual improprieties," examining physician's findings are entitled to no less weight when examination is procured by claimant than when it is obtained by defendant). Indeed, the undersigned notes that in many cases defendant has relied on such evaluation reports to find a claimant not disabled.  Claimants should not be penalized if the same type of evaluation report instead contains clinical evidence that support their claims, once more absent evidence of

REPORT AND RECOMMENDATION - 9

actual improprieties on the part of evaluating medical source.

Nor does the undersigned find, as did the ALJ, that the evaluation reports Drs. Neims and Wheeler issued are "not impressively supported by findings and observations." Tr. 19. Again, as noted above, the presence alone of a mental status examination and the clinical observations of the evaluating medical source constitutes competent evidence sufficient to support psychological diagnosis and assessments. In addition, both Dr. Wheeler and particularly Dr. Neims included in their evaluation reports written notes to support the functional assessments, diagnoses and other findings contained therein. See Tr. 159-65, 251-59, 261-69, 278-89. Nor is it clear what the ALJ means by "not impressively supported" here, again given that Drs. Wheeler and Neims included the type of clinical findings in their evaluation reports the courts have recognized as constituting competent evidence.

The ALJ also fails to articulate with sufficient specificity what "other objective medical evidence" contradicted the findings and opinions of Dr. Wheeler and Dr. Neims. Tr. 19. Indeed, much of that objective medical evidence, as discussed herein, the ALJ also improperly rejected. The same is true in regard to the ALJ's statement that the evaluations of Drs. Wheeler and Neims are inconsistent with plaintiff's "wide range of activities." Tr. 19. While there is, as discussed as well below, some evidence that plaintiff was more active than an allegation of disability might normally indicate – even considering those allegations are based largely on claimed limitations in social functioning as opposed to an inability to engage in activities in general[1] – the ALJ does not explain how or why such activities undermine or overcome the findings and opinions of the above two examining psychologists.

---

[1] See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (only if level of activity is inconsistent with claimant's claimed limitations would claimant's activities have any bearing on his or her credibility).

REPORT AND RECOMMENDATION - 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

C.      Dr. Dhanani

In his decision, the ALJ also found in relevant part as follows:

A medical provider, Rahim Dhanani, MD, noted on August 14, 2007 that the claimant was not able to work in crowded places or where there was constant contact with people (20F -7).  I accord little weight to this opinion as it is not apparent from the record that the claimant cannot manage superficial public contact.

Id.  As argued by plaintiff, Dr. Dhanani did not opine that plaintiff was unable to work in places only where there would be more than superficial contact with the public, but also in places where it would be "crowded" or "where there was constant contact with people." Id.  This opinion thus potentially could include places that are "crowded" with co-workers and/or supervisors.  Along that line, the "constant contact with people" referred to by Dr. Dhanani here could encompass as well workplaces where contact with co-workers and/or supervisors is "constant".  Dr. Dhanani's assessment regarding social contact, furthermore, is fairly consistent with those of Dr. Wheeler and Dr. Neims, which, as explained above, the ALJ erred in rejecting.  Therefore, here too, the ALJ's stated reasons for rejecting competent medical opinion source evidence in the record with respect to plaintiff's mental impairments and limitations lacks legitimacy.

D.      Ms. Bennett

Lastly in terms of the objective medical evidence in the record, the ALJ found in relevant part with respect to Betty Bennett, A.R.N.P., one of plaintiff's treatment providers, that:

Ms. Bennett prepared a letter on behalf of the claimant on November 21, 2005 (8F-14).  She stated that the claimant was not able to leave the house without suffering acute and disabling symptoms despite medication and thus was unable to work.  She indicated that she had encouraged the claimant to be evaluated and treated by an appropriate mental health worker.  She stated that until this happened and the claimant's condition was stabilized, it was unlikely that the claimant would be able to work.  I give little weight to this opinion as it not consistent with the objective medical evidence.  I note that Ms. Bennett encouraged the claimant to seek further psychiatric treatment (*also see* 8F-18,

REPORT AND RECOMMENDATION - 11

> 8F-6, 8F-2, 8F-l).  The claimant's failure to see a psychiatrist regularly
> suggests that her condition is not as severe as she has alleged.  Ms. Bennett
> is not a qualified medical source, and I accord little weight to her statement as
> lay evidence.

Tr. 18.  Once more plaintiff argues, and the undersigned agrees, that the ALJ's stated reasons for

rejecting this competent other "medical source" evidence were improper.[2]  Thus, for example,

although the ALJ stated that Ms. Bennett's opinion was inconsistent with the objective medical

evidence in the record, it actually is fairly consistent – or at least not entirely inconsistent – with

the assessments of Drs. Wheeler and Neims that plaintiff had moderate to marked limitations in

social functioning.  See Tr. 161, 254, 265, 284.

Nor does the ALJ explain how the recommendation that plaintiff seek further psychiatric

treatment or plaintiff's failure to do so bears adversely on the opinion of Ms. Bennett, although,

as discussed below, it does on plaintiff's own credibility.  In addition, while it is true that a nurse

practitioner, is not an "acceptable medical source" as that term is defined in the Social Security

Regulations, and therefore may be given less weight than those of acceptable medical sources,

evidence from "other sources" – including other "medical sources" such as nurse practitioners –

may be used to "show the severity" of a claimant's impairments and the effect thereof on the

claimant's ability to work. See Gomez v. Chater, 74 F.3d 967, 970-71 (9th Cir. 1996); 20 C.F.R.

§ 404.1513(a), (d), § 416.913(a), (d) (acceptable medical sources include licensed physicians, not

nurse practitioners); see also SSR 06-03p, 2006 WL 2329939 *3 ("Opinions from these medical

sources . . . are important and should be evaluated on key issues such as impairment severity and

functional effects, along with the other relevant evidence in the file.").

---

[2] As explained below, contrary to the ALJ's statement here, nurse practitioners are other "medical sources" and not just lay witnesses, that are recognized by defendant as providing competent objective medical evidence regarding a claimant's symptoms and limitations, and therefore which must be taken into account by the ALJ, although they may be given less weight that opinions from "acceptable medical sources," such as licensed physicians or licensed and certified psychologists and psychiatrists.

REPORT AND RECOMMENDATION - 12

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

II.      The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample, 694 F.2d at

642.  The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580.

In addition, the Court may not reverse a credibility determination where that determination is

based on contradictory or ambiguous evidence. See id. at 579.  That some of the reasons for

discrediting a claimant's testimony should properly be discounted does not render the ALJ's

determination invalid, as long as that determination is supported by substantial evidence.

Tonapetyan , 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent

reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted).  The ALJ "must identify what

testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also

Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the

claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear

and convincing." Lester, 81 F.2d at 834.  The evidence as a whole must support a finding of

malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of

credibility evaluation," such as reputation for lying, prior inconsistent statements concerning

symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273,

1284 (9th Cir. 1996).  The ALJ also may consider a claimant's work record and observations of

physicians and other third parties regarding the nature, onset, duration, and frequency of

symptoms. See id.

In this case, the ALJ discounted plaintiff's credibility in part for the following reason:

The claimant reported a wide range of activities which is inconsistent with the
alleged limitations.  The claimant completed a function report in December

REPORT AND RECOMMENDATION - 13

2005 indicating that she had no problems with her personal care and that she was able to prepare meals, perform household chores, drive a car, and shop in stores (1E). She also indicated that despite being more socially isolated, she continued to engage in social activities (1E). The claimant told the consultative examiner, Dr. Cosgrove, that she enjoyed doing yard work, going on walks, and going to the beach (4F-7, 4F-8). She also reported to Dr. Cosgrove that she would watch movies and go for rides with her boyfriend (4F-8). The claimant additionally reported to care providers that she watched her grandchildren (8F -24, 17F -6).

Tr. 17. To determine whether a claimant's symptom testimony is credible, the ALJ may consider his or her daily activities. Smolen, 80 F.3d at 1284. Such testimony may be rejected if the claimant "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." Id. at 1284 n.7. The claimant need not be "utterly incapacitated" to be eligible for disability benefits, however, and "many home activities may not be easily transferable to a work environment." Id.

Plaintiff argues the record shows the activities she engaged in hardly constitute the wide range of activities indicated by the ALJ in his decision. But while the function report completed by plaintiff does indicate a more limited range of activities than those suggested by the ALJ (see Tr. 97-102), Dr. Cosgrove noted in relevant part as follows in regard thereto:

. . . The claimant . . . does all the housework and laundry. . . . She will . . . exercise by lifting weights at home for about 45 minutes. When the weather is nicer, such as spring, summer, and autumn, she will go out and work in the yard. She does enjoy gardening and going to the beach. She does enjoy watching movies. She will visit with her boyfriend. . . . They will watch movies together and go for rides. For dinner, she is usually on her own and will make something like chicken and mashed potatoes, or hamburger helper. . . . In the summer, she likes to stay out in the yard and go for walks. She manages her own finances and does her own grocery shopping. She drives and does her own laundry and housework.

Tr. 190-91. This description of plaintiff's activities, which clearly must have been based on her own self-report, is essentially the same as the description of those activities provided by the ALJ.

REPORT AND RECOMMENDATION - 14

In addition, these activities do seem to be fairly wide ranging, or at least more so than plaintiff's allegation of disability would indicate.[3]

Plaintiff, however, further argues that the activities cited by the ALJ and evidenced in the record cannot be used to discount her credibility, as they are not inconsistent with her claims of disability, which she notes are based on her mental functional limitations, particularly in terms of panic attacks, agoraphobia and difficulty being around other people.  It is true that in Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998), the Ninth Circuit did state that "[o]nly if the level of activity" is "inconsistent with" the claimant's "claimed limitations would [that activity] have any bearing on [the claimant's] credibility."  However, although not all of the activities noted by the ALJ above necessarily are inconsistent with plaintiff's alleged problems with panic, agoraphobia and difficulty being around others, some of them reasonably can be seen as not being consistent therewith.  For example, while plaintiff notes she has had problems leaving her house most of the time (see Tr. 38, 44), again she reported to Dr. Cosgrove that in the spring, summer and autumn, she goes out and works in the yard – and, indeed, that she "likes to stay out" there at those times

---

[3] Plaintiff cites to Vertigan v. Halter, 260 F.3d 1044 (9th cir. 2001), to assert that the mere fact that a claimant "has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." Id. at 1150.  While true, and although a claimant need not be "be 'utterly incapacitated' in order to be disabled," Vertigan is distinguishable on its facts:

> . . . [The claimant] testified that she is able to go grocery shopping with assistance, walk approximately an hour in the malls, get together with her friends, play cards, swim, watch television, and read.  She also took physical therapy for six months and exercised at home. The ALJ relied on this evidence to conclude that [the claimant's] daily activities involved physical functions that were inconsistent with her claims of pain.  Yet, these physical activities did not consume a *substantial part* of [the claimant's] day. . . .  In addition, activities such as walking in the mall and swimming are not necessarily transferable to the work setting with regard to the impact of pain.  A patient may do these activities *despite* pain for therapeutic reasons, but that does not mean she could concentrate on work despite the pain or could engage in similar activity for a longer period given the pain involved.  As such, we find only a scintilla of evidence in the record to support the ALJ's finding that she lacked credibility about her pain and physical limitations.  As revealed by the medical reports, [the claimant] constant quest for medical treatment and pain relief refutes such a finding.

Id. at 1049-1050 (quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)) (emphasis in original).  The activities engaged in by the claimant in Vertigan clearly are much more limited than plaintiff's self-report regarding her own activities made to Dr. Cosgrove indicates in this case.

REPORT AND RECOMMENDATION - 15

1  (Tr. 191) – that she goes to the beach and that she does her own grocery shopping.

2      These are all activities that involve going outside of her house, and at least with respect to

3  the last two activities, necessarily would entail at least some contact with other people.  The fact

4  that she likes to both go and stay outside in her yard when the weather is nicer – and indeed for

5  as much as three quarters of a year – contradicts her assertion that she has had problems leaving

6  her house most of the time.  The ALJ thus did not err in discounting plaintiff's credibility on the

7  basis that she engaged in a wide range of activities or on the basis that those activities contradict

8  her alleged disabling limitations.

9      The ALJ next discounted plaintiff's credibility in part on the following basis:

10

11     The claimant has not always been compliant with treatment which suggests
       that her condition is not as severe as she has alleged.  The evidence indicates
12     that the claimant has been encouraged to regularly see a psychiatric but she
       has failed to follow through (8F).  The claimant also has not regularly sought
13     counseling (17F). . . .

14     . . .

15

16     It appears that the claimant has episodically sought treatment at Kitsap Mental
       Health (2F, 17F, 18F).  The claimant was assessed in November 2005 and it
17     was determined that she had a GAF of 60 which reflects moderate limitations
       in social and occupational health (2F).  The claimant however did not meet the
18     criteria to be seen at the agency (2F).  The claimant again sought treatment in
       July 2006 (17F).  The claimant met with a mental health worker but was
19     discharged in January 2007 due to lack of participation (17F).  The claimant
       presented again in September 2007 for return of services but stated that she
20     was not interested in counseling but would like her prescriptions refilled
       (17F).  A mental health worker noted that the claimant was overusing
21     Klonipin (17F).  The claimant met with a mental health worker in October
       2007 but then failed to show up for her sessions (17F).  The claimant also has
22     episodically met with a nurse practitioner at Kitsap Mental Health for
       medication management but has missed numerous appointments (18F).  The
23     State of Washington requires welfare recipients to attend counseling, and the
       record reads as though [the] claimant periodically makes contact when
24     required or prompted by external sources, likely her caseworker.

25

26 Tr. 17.  The failure to assert a good reason for not seeking or following a prescribed course of

REPORT AND RECOMMENDATION - 16

treatment "can cast doubt on the sincerity of the claimant's pain testimony." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989); see also Meanal v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered claimant's failure to request serious medical treatment for supposedly excruciating pain); Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (upholding ALJ in discounting claimant's credibility in part due to lack of consistent treatment, and noting fact that claimant's pain was not sufficiently severe to motivate her to seek treatment, even if she had sought some treatment, was powerful evidence regarding extent to which she was in pain).

Plaintiff argues this was not a valid reason for discounting her credibility, in light of the statement by Dr. Cosgrove that she did "not have much insight into her psychiatric symptoms and their effect on her social and occupational functioning." Tr. 190.  But there is nothing in this or any of Dr. Cosgrove's other comments to indicate that plaintiff's lack of insight here had any impact on her ability to seek and/or follow through with treatment.  Indeed, as noted above, Dr. Cosgrove herself recommended active psychotherapy. See Tr. 191-92.  Plaintiff further argues that she had tried to obtain mental health treatment, but that it was "not surprising" she had been consistently discharged from such treatment, given her anxiety, agoraphobia and difficulty being around other people. ECF #13, p. 9.  Again, however, the record fails to support plaintiff's claim that this was the actual reason why she failed to follow through.[4]  See Tr. 187, 212, 292-93, 308-310, 314, 320-22, 334, 361-62, 368, 384.

The last reason the ALJ provided for discounting plaintiff's credibility is that:

The evidence . . . indicates that the claimant misused her prescribed

---

[4] The undersigned does agree with plaintiff, though, that because neither the ALJ nor defendant has provided any support for the ALJ's statement that "[t]he State of Washington requires welfare recipients to attend counseling," the ALJ erred in discounting plaintiff's credibility on the basis that "the record reads as though [she] periodically makes contact when required or prompted by external sources likely her caseworker." Tr. 18.  Nevertheless, the fact that one of the reasons the ALJ gave for discounting plaintiff's credibility was improper, does not render his credibility determination invalid, as long as that determination is supported by substantial evidence in the record, as it is in this case as discussed herein. See Tonapetyan, 242 F.3d at 1148.

REPORT AND RECOMMENDATION - 17

medication. . . . [Ms.] Bennett . . . expressed concern over the claimant's use
of Klonipin and on June 8, 2006 refused to further prescribe this medication
(8F-2).  The claimant later sought treatment with other care providers for
prescriptions of her medications (20F).

Tr. 17.  This was a valid basis upon which to discount plaintiff's credibility, which plaintiff has

not specifically challenged.  See Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001) (ALJ

properly considered claimant's drug-seeking behavior).  Accordingly, the undersigned finds the

ALJ's credibility determination in this case to have been proper overall.

III.    The ALJ's Evaluation of the Lay Witness Evidence in the Record

        Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must

take into account," unless the ALJ "expressly determines to disregard such testimony and gives

reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir.

2001).  In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably

germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly

link his determination to those reasons," and substantial evidence supports the ALJ's decision.

Id. at 512.  The ALJ also may "draw inferences logically flowing from the evidence." Sample,

694 F.2d at 642.

        The ALJ dealt with the lay witness evidence in the record as follows:

        A lay witness questionnaire was completed by Cynthia Burris[, plaintiff's
        friend,] in August 2008 (11E).  She answered questions regarding the
        claimant's functioning as of December 31, 2006.  No physical limitations
        were observed but she indicated that the claimant experienced anxiety and
        depression.  She stated that the claimant had difficulties being around people.
        She reported that the claimant forgot or could not handle doing important
        tasks such as filling out paperwork for benefit programs.  I have considered
        this reporting but note that despite the claimant's psychiatric symptoms, she
        has still been able to engage in a wide range of activities.

Tr. 17.  Plaintiff argues that because the ALJ erred in finding plaintiff engaged in a wide range of

activities in general, this also was not a germane reason for rejecting the testimony of Ms. Burris.

REPORT AND RECOMMENDATION - 18

1    But Ms. Burris stated that plaintiff shut herself in and could not stand people (see Tr. 146), while

2    as discussed above, plaintiff's own self-reporting reveals she likes to spend a good portion of the

3    day, and indeed the year, outside the house.  Accordingly, at least with respect to those aspects of

4    the written statement provided by Ms. Burris, this was a germane reason for rejecting them.  In

5    addition, as noted above, plaintiff reported to Dr. Cosgrove that she was able to manage her own

6    finances and go shopping, which contradicts the statement provided by Ms. Burris that plaintiff

7    could not handle important tasks.  Plaintiff argues Ms. Burris noted that she became aware of her

8    limitations every time she interacted with her grandchild.  Ms. Burris, however, gave no specific

9    details in this regard.  As such, the undersigned finds not error here.

10

11   IV.    This Matter Should Be Remanded for Further Administrative Proceedings

12          The Court may remand this case "either for additional evidence and findings or to award

13   benefits." Smolen, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the

14   proper course, except in rare circumstances, is to remand to the agency for additional

15   investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations

16   omitted).  Thus, it is "the unusual case in which it is clear from the record that the claimant is

17   unable to perform gainful employment in the national economy," that "remand for an immediate

18   award of benefits is appropriate." Id.

19          Benefits may be awarded where "the record has been fully developed" and "further

20   administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan

21   v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded

22   where:

23          (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the
            claimant's] evidence, (2) there are no outstanding issues that must be resolved
24          before a determination of disability can be made, and (3) it is clear from the

25

26

REPORT AND RECOMMENDATION - 19

record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues remain with respect to the medical evidence in the record concerning plaintiff's mental impairments and limitations, it is unclear whether the assessment of plaintiff's residual functional capacity provided by the ALJ or the ALJ's determination that plaintiff is capable of performing other jobs existing in significant numbers in the national economy at step five of the sequential disability evaluation process is supported by substantial evidence. It thus also is not clear whether the ALJ properly found her to be not disabled, and accordingly this matter should be remanded to defendant to conduct further administrative proceedings.[5]

---

[5] Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found to be disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. Id. If at step three of the evaluation process, a disability determination "cannot be made on the basis of medical factors alone," the ALJ then must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id. It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

In this case, the ALJ found plaintiff had the mental residual functional capacity to have superficial contact with the general public. See Tr. 16. As discussed above, though, the medical opinion source evidence in the record that the ALJ erred in evaluating indicates the presence of greater mental functional limitations than the one noted by the ALJ here. In addition, if a claimant cannot perform his or her past relevant work, at step five of the sequential disability evaluation process, the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

The Grids, however, may be used if they "completely and accurately represent a claimant's limitations." Tackett, 180 F.3d at 1101 (emphasis in original). That is, the claimant "must be able to perform the full range of jobs in a given category." Id. (emphasis in original). If the claimant "has significant non-exertional impairments," therefore, reliance on the Grids is not appropriate. Ostenbrock, 240 F.3d at 1162; Tackett, 180 F.3d at 1102 (non-exertional impairment, if sufficiently severe, may limit claimant's functional capacity in ways not contemplated by Grids). In this case, the ALJ relied on the Grids to find plaintiff to be capable of performing other jobs existing in significant numbers in the national economy. See Tr. 20-23. Again, though, given the ALJ's errors in evaluating the

REPORT AND RECOMMENDATION - 20

1

CONCLUSION

2

Based on the foregoing discussion, the Court should find the ALJ improperly concluded

3

plaintiff was not disabled.  As such, the Court should reverse defendant's decision and remand

4

this matter to defendant for further administrative proceedings in accordance with the findings

5

contained herein.

6

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.")

7

72(b), the parties shall have **fourteen (14) days** from service of this Report and

8

9

Recommendation to file written objections thereto. <u>See</u> <u>also</u> Fed. R. Civ. P. 6.  Failure to file

10

objections will result in a waiver of those objections for purposes of appeal. <u>See</u> <u>Thomas v. Arn</u>,

11

474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk

12

is directed set this matter for consideration on **April 1, 2011**, as noted in the caption.

13

DATED this 14th day of March, 2011.

14

15

16

17

Karen L. Strombom
United States Magistrate Judge

18

19

20

21

22

23

24

25

26

---

medical evidence in the record concerning plaintiff's mental impairments and limitations, it is unclear whether the ALJ would be able to rely solely on the Grids to find her not disabled at step five.

REPORT AND RECOMMENDATION - 21